# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| POWERHOUSE PRODUCTIONS, INC., § | | |
| and HOWARD MCKINNIE GIBSON, JR., § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Case No. 4:07-cv-071 | |
| § | | |
| TROY WIDGERY, GO FAST SPORTS § | | |
| AND BEVERAGE COMPANY, XTREME § | | |
| ROCKET SERVICES, L.L.C., and § | | |
| JET P.I., L.L.C., § | | |
| Defendants. § | | |

## MEMORANDUM OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

The following are pending before the court:

1. Defendants Troy Widgery, Go Fast Sports and Beverage Company and Jet P.I. LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Jury Demand (de # 7);

2. Plaintiffs' Response to Defendants Widgery, Go Fast Sports and Beverage Company and Jet P.I.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motion for More Definite Statement Pursuant to F.R.C.P. 12(e) (de # 10);

3. Defendants' Reply to Plaintiffs' Response to Motion to Dismiss for Lack of Jurisdiction and Improper Venue or in the Alternative Transfer this Action to the State of Colorado and Motion for More Definite Statement (de # 13); and

4. Plaintiffs' Sur-reply to Defendants Widgery, Go Fast Sports and Beverage Company and Jet P.I.'s Reply to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Motion for More Definite Statement Pursuant to F.R.C.P. 12(e) (de # 22).

In their Motion, Troy Widgery, Go Fast Sports and Beverage Company ("Go Fast") and Jet P.I., L.L.C. (collectively, "moving Defendants") move the court to dismiss them from this case on the basis that the court lacks personal jurisdiction over them. In the alternative, the moving

Defendants would have the court transfer this case to the United States District Court for the District of Colorado. Based on the Motion, the briefing responsive thereto and the applicable law, the court is of the opinion that the moving Defendants' Motion to Dismiss should be DENIED.

## I. BACKGROUND

This dispute arises out of failed commercial relations between the Plaintiffs and the Defendants and accusations that Widgery recruited one of Powerhouse's key employees to work for Go Fast. Powerhouse coordinates marketing efforts on behalf of clients by coupling the clients's name and product with an entertaining display of its "jet-propelled flying apparatus." (Pl.'s Orig. Compl. ¶ 10.) The Rocketbelt, as the device is called, can be strapped to an individual, enabling that person to fly freely in all directions. (*Id*.) In connection with the Rocketbelt, Powerhouse has used the trademarks ROCKETMAN and ROCKETBELT since at least 1981. (*Id*. at ¶ 11.) On November 17, 1995 and January 16, 2004, respectively, Powerhouse applied for, and subsequently secured, trademark protection of these names. (*Id*. at ¶ 12.)

Widgery is, and was at all times relevant, the President of Jet P.I. and the President and CEO of Go Fast. (Aff. of Troy Widgery 1, 3.) Sometime in the middle of 2002, Widgery contacted Powerhouse about promoting the Go Fast energy beverage. (Compl. at ¶ 31.) Powerhouse eventually performed at least one flight for Go Fast. (*Id*. at ¶ 32.)

Eric Scott was one of Powerhouse's pilots. (*Id*. at ¶ 35.) When Scott was hired, he had no prior experience with the technology Powerhouse uses. (*Id*.) He was instructed on how to use the equipment and was thereby exposed to many of Powerhouse's trade secrets and confidential information. (*Id*. at ¶ 37.) Though the moving Defendants disagree (Defs.' Reply 6.), the Plaintiffs allege that Scott was recruited by Widgery to join Go Fast and, later, to join Jet P.I. (Pls.' Resp. 2.)

Scott went on to disclose confidential and proprietary information to the moving Defendants, enabling them to compete with Powerhouse by virtue of Powerhouse's own information. (Compl. at ¶ 39.)

The Plaintiffs allege that Scott's activities are in violation of nondisclosure and noncompete clauses in his employment contract with Powerhouse. (*Id*. at ¶¶ 36-40.) Scott would later form Xtreme Rocket Services ("XRS"), a Colorado limited liability company. XRS did not join in either Motion.

Go Fast, Jet P.I., and Widgery are all Colorado citizens. Go Fast is a Colorado corporation with its principal place of business in Colorado. Jet P.I. is a Colorado limited liability company with its principal place of business in Colorado. The Plaintiffs have stated causes of action against the Defendants for unfair competition, copyright infringement, misappropriation of trade secrets and confidential information and various additional business torts. The moving Defendants assert that this court does not have personal jurisdiction over them and would have the court dismiss them from this action on that basis. Alternatively, the moving Defendants request that the court transfer the action to the United States District Court for the District of Colorado.

## II. LEGAL STANDARD

Once a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, the court's resolution relies on briefing rather than an evidentiary hearing, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Id*. When considering the motion to dismiss, the court must accept as true the

plaintiff's uncontroverted allegations and resolve all factual disputes in favor of the plaintiff. *Id*. The court is to consider the existence of personal jurisdiction on the basis of the facts as they existed at the time the complaint was filed. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990).

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). First, absent a controlling federal statute regarding service of process, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id*. Second, it must be determined whether the exercise of jurisdiction comports with due process. *Id*. Because the Texas long-arm statute extends as far as Due Process allows, *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007), the analysis collapses into a single inquiry into whether the exercise of personal jurisdiction comports with the guarantees of the Fourteenth Amendment. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 n.1 (5th Cir. 2007).

A district court may not exercise personal jurisdiction over a nonresident defendant unless that party has "purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state" and exercise of that jurisdiction "does not offend traditional notions of fair play and substantial justice." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).

In determining whether the exercise of personal jurisdiction over a party is consistent with traditional notions of fair play and substantial justice, the court considers five factors. *Paz*, 445 F.3d at 814. Those factors are the burden on the defendant, the forum state's interests, the plaintiff's

interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies. *Id*.

Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Elements which must exist for the court to exercise specific jurisdiction are: (1) the foreign defendant must purposely direct his activities at residents of the forum and (2) the cause of action must arise from or be connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Conversely, general jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum..." *Helicopteros*, 466 U.S. 408, 415 n.9. General jurisdiction exists only when the defendant's contacts with the state constitute "continuous and systematic" general contacts with the forum. *Id*. at 416; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

### III. DISCUSSION AND ANALYSIS

<u>Troy Widgery</u>

The Plaintiffs assert that this court has personal jurisdiction over Widgery on several bases. Widgery was served with process in this action while he was present in the State of Texas. Widgery traveled to Texas to observe and testify in a related state court dispute between the Plaintiffs and Scott. (Pls.' Resp. 6.) Neither Widgery nor any of his businesses were parties in that lawsuit. Personal service in the forum state is sufficient to confer personal jurisdiction over the party served on the courts of that state. *Burnham v. Superior Court*, 495 U.S. 604, 619 (1990) (plurality opinion); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2 (2006). Widgery makes no allegation

that his presence in the state was the result of fraud or overreaching. His appearance at the state court proceedings was voluntary; therefore the court's exercise of personal jurisdiction over him is consistent with Due Process.

Widgery argues that the fiduciary shield doctrine prevents the court from exercising jurisdiction over his person. The fiduciary shield doctrine exempts individuals from the jurisdiction of a court when the minimum contacts that would otherwise give rise to personal jurisdiction are the result of activities conducted solely on behalf of a corporate entity. *Richards Group, Inc. v. Brock*, No. 3:06-cv-0799-D, 2007 U.S. Dist. LEXIS 16023, at *8 (N.D. Tex. March 7, 2007). Because Widgery potentially faces personal liability from the tortious activity alleged against him in this lawsuit, *see Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002), the fiduciary shield doctrine is inapplicable. *E.g.*, *Lewis v. Indian Springs Corp.*, 175 S.W.3d 906, 917 (Tex. App.—Dallas 2005, no pet.). Moreover, it is not clear that Widgery's attendance at and participation as a witness in the state court trial were "*solely* [in his role] as a corporate officer." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (emphasis added). Widgery is amenable to the personal jurisdiction of this court.

Go Fast Sports and Beverage Company

The Plaintiffs assert that Go Fast is susceptible to the jurisdiction of this court because of the nature of its website, www.gofastpsorts.com. Courts in this circuit analyze websites as a source of personal jurisdiction based on the "nature and quality of commercial activity conduct[ed]" by the site. *Mink v. AAAA Development, L.L.C.*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The *Zippo* test contemplates a spectrum of commercial activity consisting of three categories of websites. *Mink*, 190 F.3d at 336.

The first category envisions websites by which a "defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of files over the Internet.'" *Id*. (quoting *Zippo*, 952 F. Supp. at 1124). This type of website makes personal jurisdiction appropriate. The other end of the spectrum involves passive websites devoid of interactivity that constitute nothing more than advertisements. *Mink*, 190 F.3d at 336. Jurisdiction based on this type of site is not appropriate. In the middle are websites that allow some exchange of information with the defendant's host computer. In this arena, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id*. (quoting *Zippo*, 952 F. Supp. at 1124). Though the *Mink* decision adopted this test in the context of general personal jurisdiction, the Fifth Circuit Court of Appeals has blessed its use in evaluating the existence of specific personal jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

The Go Fast website provides for the bulk purchase of Go Fast products, clothing and promotional gear. (Pls.' Resp. Ex. A.) The website also prompts users to provide an email address and sign up for a Go Fast newsletter. (*Id*.) Registrants also receive a welcome kit that displays the allegedly offending trademarks. (*Id*.) Finally, the website solicits applications from athletes for Go Fast sponsorship. (*Id*.)

The Plaintiffs's position is that the website is in the *Zippo* middle ground. (*Id*. at 8.) The court agrees. Although there is no evidence that Go Fast has contracted with any Texas resident through its website, *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002), Go Fast intentionally directed the infringing marks at Texas residents through its website, availing themselves of this forum. *First Fitness Int'l, Inc. v. Thomas*, No, 3:07-cv-1171-N,

2008 U.S. Dist. LEXIS 11753, at *8 (N.D. Tex. Jan. 2, 2008). The website solicited user input so that marketing materials containing the infringing marks could be mailed to residents of Texas.

The court is further informed by the previous commercial relations between Powerhouse and Go Fast. Go Fast was well aware of Powerhouse's business, including where it does business, its use of the trademarks and that unapproved dissemination of the marks would harm Powerhouse. *Id*. at *8-9. Go Fast, therefore, has made minimum contacts with Texas, and those contacts relate specifically to this lawsuit. *Helicopteros*, 466 U.S. at 414 n.8.

The court further finds that exercising jurisdiction over Go Fast is consistent with traditional notions of fair play and substantial justice. Considering the five factors that inform this conclusion, only the burden on the defendant potentially weighs against personal jurisdiction. But Go Fast has not even suggested that litigating this lawsuit in Texas would be a burden. Even if it were, the remaining factors overwhelmingly support the exercise of jurisdiction over Go Fast.

<u>Jet P.I., L.L.C.</u>

The Plaintiffs next argue that the court has personal jurisdiction over Jet P.I. The basis for their argument is that the Jet P.I. website is "an extension of the Go Fast website." (Pls.' Resp. 8.) The Jet P.I. website allows users to download videos of the Jet P.I. jetpack in action, and most, if not all, of the videos feature the jetpack pilot wearing clothing that prominently displays the Go Fast logo. (*Id*. at Ex. B.) The website also links directly to the Go Fast website. (*Id*.) Otherwise, the Jet P.I. website provides a brief history of the company. (*Id*.) There is no evidence that Jet P.I. solicits business through its website. There is no evidence that users are able to provide information to Jet P.I. through its website or, interact with Jet P.I. or other website users in any way.

Jet P.I.'s website is *Zippo*-passive. That is, Jet P.I.'s is a "passive website that does nothing

more than advertise on the Internet." *Mink*, 190 F.3d at 336. Thus, the website is insufficient to create personal jurisdiction over Jet P.I. *Id*. In addition, this result is consistent with this Circuit's precedent as regards conventional advertising. *Quick Techs., Inc. v. Sage Group*, 313 F.3d 338, 345 (5th Cir. 2002).

The fact that the Jet P.I. website links to the Go Fast website is irrelevant. Absent some sort of veil-piercing theory not advanced by the Plaintiffs, Go Fast's contacts with the State of Texas are not attributable to Jet P.I. The Plaintiffs base their argument in favor of jurisdiction over Jet P.I. on nothing more than its website. Because Jet P.I. has insufficient contacts with Texas, the court finds that it does not have jurisdiction over Jet P.I. The Plaintiffs request additional discovery to investigate the jurisdictional facts as to Jet P.I. The court will grant the Plaintiffs' request and allow the parties to conduct discovery regarding the court's jurisdiction over Jet P.I. for 60 days from the entry of this order.

<u>Alternative Motion to Transfer Venue</u>

The moving Defendants alternatively seek a transfer under 28 U.S.C. § 1404(a) to the Denver Division of the United States District Court for the District of Colorado. Their claim is that trying the case in Denver would be "substantially more convenient" than trying the case in this court. (Def's. Mot. to Dismiss at 12.)

Section 1404(a) allows district courts to transfer cases to any district court in which the case could have originally been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2006). Section 1404 is to be applied on an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Once the court determines that the matter could have been originally brought before a

potential transferee court, the court considers factors relating to the interests of both the parties and the judiciary. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am. Inc.*, 506 F.3d 376, 380 (5th Cir. 2007) (internal quotation marks omitted), *reh'g granted at* No. 07-40058, 2008 U.S. App. LEXIS 3322, at *1 (5th Cir. Feb. 14, 2008).[1] The court must also weigh the public interest factors, which include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id*. (internal quotation marks omitted). In addition, the court must give appropriate deference to the Plaintiffs' choice of forum. *Id*.

*Relative ease of access to sources of proof*

The Plaintiffs are residents within the Eastern District of Texas. There is no indication that their records are not located within this district. The moving Defendants are residents within the District of Colorado. There is also no indication that their records are located outside of that district.

---

[1] The Fifth Circuit Court of Appeals will rehear this case *en banc*. However, the public and private interest factors are well-settled, and the court does not anticipate those factors being amended. *In re Volkswagen* clarified the weight given to the plaintiff's choice of forum in this Circuit. The moving party must establish "good cause" for the transfer, and that party has the burden of proof on the issue. *In re Volkswagen*, 506 F.3d at 384. Prior opinions conflated the weight to be given to the plaintiff's choice of forum in the transfer context with that to be given it in the *forum non conveniens* context. *See id.* The court is of the opinion that application of either the current (and possibly short-lived) or former standard mandates the same result.

Sources of proof, therefore, likely exist in both districts, and transfer to Colorado would not make access to sources of proof any easier. This factor is neutral.

*Availability of compulsory process*

The parties do not assert where the key witnesses live, so the court will presume that the Defendants' witnesses live in Colorado and that the Plaintiffs' witnesses live in Texas. As such, any subpoena issued by this court compelling the appearance of non-party witnesses who live in Colorado will be susceptible to the provisions of Rule 45(c)(3)(A). The district court in Colorado would face similar problems in compelling the attendance of non-party witnesses who live in Texas. Therefore, this aspect of the trial in the district court in Colorado is no more convenient than in this court, and this factor is neutral.

*Cost of attendance for willing witnesses*

As this matter now stands, willing witnesses who live in Colorado must necessarily incur substantial expense to attend the trial in this court. Transfer to the district court in Colorado would create the same problem for witnesses who live in Texas. This factor is, therefore, neutral.

*Other factors*

The court has found, based upon the parties' current briefing, that one of the moving defendants, Jet P.I., is not subject to the jurisdiction of this court. Additionally, it is not clear that XRS would be susceptible to this court's jurisdiction. Of course, XRS did not join in the Motion to Dismiss, so the parties have not had the occasion to fully brief the jurisdictional issue as to XRS. Thus, the Plaintiffs are potentially left without the ability to obtain relief from at least one Defendant, and perhaps two, so long as this lawsuit remains in this court. Were this case to be tried in the Colorado district court, the Plaintiffs would be able to obtain relief from all of the Defendants.

However, because the court has granted the Plaintiffs additional discovery as to the jurisdictional issues, this factor is susceptible to material change. This factor is, therefore, neutral.

*Plaintiffs' choice of forum*

The Plaintiffs have chosen to have their cause heard in this district. That choice is to be accorded proper deference. *In re Volkswagen*, 506 F.3d at 384. The moving Defendants have not presented any evidence that the Plaintiffs engaged in forum-shopping. Indeed, the facts of this matter bear a natural relationship to this district. *Cf. Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 831 (E.D. Tex. 2002) (explaining that the deference given to the plaintiff's choice of forum is diminished when the forum bears no relationship to the facts of the case). This factor, therefore, weighs against transfer.

*Court congestion*

The statistics reveal that the United States District Court for the District of Colorado has roughly six-hundred fewer pending civil cases than does the United States District Court for the Eastern District of Texas. U.S. District Courts—Civil Cases Commenced, Terminated, and Pending, *available at* http://www.uscourts.gov/caseload2007/tables/C00Mar07.pdf (last visited on March 11, 2008). Moreover, the statistics show that this district had 674 weighted filings per judgeship for the year ending September 30, 3007. The District of Colorado had 527 weighted filings per judgeship. Notwithstanding the differences in weighted filings and pending caseload, the undersigned judge does not base transfer decisions on the relative workloads of this court and the proposed transferee court. Therefore, this factor is neutral.

*Local interest*

This lawsuit involves the claims of Texas citizens for damages that have been allegedly

suffered in the State of Texas and elsewhere. The citizens in this district clearly have an interest in determining whether their neighbors have been injured, regardless of the place from which the offending acts originate. However, some of the acts that give rise to the claims in this lawsuit took place in the State of Colorado. The citizens of that state have an interest in the affairs of businesses local to them. But the alleged harm is more localized to the citizens of this district. This factor weighs slightly against transfer.

*Familiarity of the forum with the applicable law*

The claims presented in this matter arise out of both federal law and the law of the State of Texas. Though both courts are equally adept at applying federal law, this court is likely more familiar than the Colorado court with Texas law. This factor weighs against transfer.

*Avoidance of conflicts of law*

The parties do not argue that this matter implicates complicating issues related to conflicts of law. The court agrees. This factor is, therefore, neutral.

Based on the analysis of the transfer factors, the court finds that the convenience of the witnesses and parties is unlikely to be affected in any great measure by transfer, and that deference to the Plaintiffs' choice of forum and the interests of justice would best be served by trying this lawsuit in this court. Should the Defendants desire to do so, they are free to re-file their Motion to Dismiss with respect to Jet P.I. and Alternative Motion to Transfer Venue at the conclusion of discovery as to the facts supporting personal jurisdiction over Jet P.I.

### IV. CONCLUSION

Based on the foregoing, the court finds that it has personal jurisdiction over Troy Widgery and Go Fast Sports and Beverage Company, L.L.C. The court also finds that it lacks personal

jurisdiction over Jet P.I., L.L.C. The court is of the opinion that the Plaintiffs should have 60 days to discover additional facts that may support this court's jurisdiction over Jet P.I. It is therefore

ORDERED that the Defendants' Motion to Dismiss (de # 7) is DENIED. It is further

ORDERED that the Plaintiffs shall have 60 days to conduct discovery regarding the factual basis supporting the court's personal jurisdiction over Jet P.I., L.L.C.

IT IS SO ORDERED.

**SIGNED this the 25th day of March, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE